## COPE *v.* ANDERSON, RECEIVER.

NO. 593.

Argued April 28, 1947.—Decided June 2, 1947.

462

*Harold Evans* argued the cause for petitioner in No. 593. With him on the brief was *John Wintersteen.*

*Robert S. Marx* argued the cause for petitioner in No. 656 and respondent in No. 593. With him on the briefs were *Frank E. Wood, Harry Kasfir* and *Wm. C. Kelly.*

*Murray Seasongood* argued the cause for respondents in No. 656. With him on the brief were *Robert P. Goldman* and *Joseph A. Segal.*

MR. JUSTICE BLACK delivered the opinion of the Court.

In *Anderson* v. *Abbott,* 321 U. S. 349, we held that the shareholders of BancoKentucky Company, a bank-stock-holding company, were liable under 12 U. S. C. §§ 63, 64, for an assessment on shares of an insolvent national bank held in the portfolio of the holding company. That suit was brought in a Kentucky District Court against Banco stockholders residing in that District. These suits in equity were brought in Federal District Courts in Ohio and Pennsylvania to enforce assessments against Ohio and Pennsylvania stockholders of Banco. In No. 656 the District Court in Ohio overruled a motion to dismiss made on the ground, among others, that the bill showed on its face that the action was barred by an Ohio statute of limitations.[1] The Sixth Circuit Court of Appeals reversed. 156 F. 2d 47. In No. 593 the Third Circuit Court of Appeals reversed the decision of the District Court in Pennsylvania which had held the action there barred by the Pennsylvania statute of limitations. 156 F. 2d 972. We granted certiorari to consider both cases. 329 U. S. 707.

There is no federal statute of limitations fixing the period within which suits must be brought to enforce the statutory double liability of shareholders of insolvent national banks. For this reason we look to Ohio and Pennsylvania law to determine the period in which these suits may be brought. *McDonald* v. *Thompson,* 184 U. S. 71; *McClaine* v. *Rankin,* 197 U. S. 154, 158; *Rawlings* v. *Ray,* 312 U. S. 96, 97. Even though these suits are in equity, the states' statutes of limitations apply. For it is only the

---

[1] For convenience, the motion was made by only four defendants who are respondents here. The case was continued as to the others pending final disposition of the question concerning the statute of limitations, the only ground of the motion to dismiss upon which the District Court passed.

464

scope of the relief sought and the multitude of parties sued which give equity concurrent jurisdiction to enforce the legal obligation here asserted. And equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy. *Russell* v. *Todd,* 309 U. S. 280, 289 and cases cited. See also *Guaranty Trust Co.* v. *York,* 326 U. S. 99; *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395–396.

But even though the period in which suit must be brought is governed by state limitations statutes, we have previously decided that the question of when the applicable state statute of limitations begins to run depends upon when, under federal law, the Comptroller of the Currency, or his authorized agent, is empowered by federal law to bring suit. And the Comptroller's agent, the Receiver here, could not bring these actions until the date for payment fixed by the Comptroller. *Rawlings* v. *Ray, supra,* 98, 99; *Fisher* v. *Whiton,* 317 U. S. 217, 220, 221. The date for payment fixed by the Comptroller in this instance was April 1, 1931. These actions were instituted more than five but less than six years after the payments became due under the Comptroller's assessment order.

With regard to No. 656, the Ohio proceeding, the Ohio statute of limitations provides that suit "upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." Ohio Gen. Code (Page, 1938) § 11222. This statute describes the liability sued on here, and if applicable does not bar this suit. But the scope of this general provision is narrowed by another known as the "borrowing statute" which reads:

"If the laws of any state or country where the cause of action arose limits the time for the commencement of the action to a less number of years than do the

statutes of this state in like causes of action then said cause of action shall be barred in this state at the expiration of said lesser number of years." Ohio Gen. Code (Page, 1938) § 11234.

If the cause of action arose in Kentucky, the "borrowing statute" applies Kentucky's statute of limitations, and this suit is barred. For Kentucky's law requires that an "action upon a liability created by statute . . . shall be commenced within five years after the cause of action accrued." Ky. Rev. Stat. (Baldwin, 1943) § 413.120.

The Receiver contends that the Ohio borrowing statute's language "the laws of any state or country where the cause of action arose" has reference to "a system of jurisprudence other than Ohio's," and does not refer "necessarily to territorial limits" within which events occurred giving rise to an enforceable obligation. The place where the events giving rise to a cause of action occur is said to be "important only insofar as the laws of that place are controlling." Under this argument, the cause of action here could not have "arisen" in any state since the statutory obligation of shareholders was not imposed or controlled by state law. Hence, the argument runs, the Ohio law did not contemplate borrowing any state statute of limitations in a case where liability is governed by federal law. And no federal statute of limitations could be borrowed in this case for none existed. Therefore, it is argued, only Ohio's general six-year statute of limitations applies.

The consequence of accepting this contention would be that the Ohio borrowing statute would have no effect at all as to suits brought in Ohio state courts to enforce actions authorized by federal law. For, of course, Ohio courts could never borrow a non-existent federal statute of limitations. And if there were a federal statute of limitations governing a federally created right, that statute

would control of its own force. *Herget* v. *Central National Bank & Trust Co.*, 324 U. S. 4. We have been cited to no decision by any Ohio court which would lead us to believe that its borrowing statute should be given such a sterilizing interpretation. *Cf. Townsend* v. *Eichelberger*, 51 Ohio St. 213, 216, 38 N. E. 207, 208.

We find it unnecessary to our decision to discuss the contentions made here concerning differences between a "cause of action" and a "liability." The Ohio Supreme Court has itself said that a "cause of action is the fact or combination of facts which gives rise to a right of action, the existence of which affords a party a right to judicial interference in his behalf." *Baltimore & O. R. Co.* v. *Larwill*, 83 Ohio St. 108, 115–116, 93 N. E. 619, 621. We have been referred to nothing in Ohio statutes or decisions which indicates that it used "cause of action" in any different sense in its borrowing statute. The purpose of the state's borrowing statute,[2] as those of other states,[3] was apparently to require its courts to bar suits against an Ohio resident if the right to sue him had already expired in another state where the combination of circumstances giving rise to the right to sue had taken place. Moreover, limitations on federally created rights to sue have similarly been considered to be governed by the limitations law of the state where the crucial combination of events transpired. *Seaboard Terminals Corp.* v. *Standard Oil Co.*, 24 F. Supp. 1018, 104 F. 2d 659; *Bluefields S. S. Co.* v. *United Fruit Co.*, 243 F. 1, 19–20. See *Campbell* v. *Haverhill*, 155 U. S. 610; *Chattanooga Foundry & Pipe Works* v. *Atlanta*, 203 U. S. 390, 397.

Our appraisal of the Ohio borrowing statute, the opinions of the courts of that state, and the circumstances

---

[2] See 25 Ohio Jurisprudence 435–440 (1932).

[3] See Note, 75 A. L. R. 203 (1931); Note, 35 Col. L. Rev. 762 (1935).

leading to this suit, persuade us that the cause of action "arose" in Kentucky within the meaning of the Ohio borrowing statute. The bank was authorized to do its banking business in Louisville and did business in no other place. See 12 U. S. C. § 81. Nor was this bank's business any the less local because its shares were held in the portfolio of a Delaware corporation. Many provisions of federal law make national banks, in important aspects, peculiarly local institutions. See 12 U. S. C. §§ 30, 33, 34 (a), 36, 51, 62, 72. For jurisdictional purposes, a national bank is a "citizen" of the state in which it is established or located, 28 U. S. C. § 41 (16), and in that district alone can it be sued. 12 U. S. C. § 94. True, when insolvency occurs, there is a shift in bank management, but the bank's activities are still necessarily rooted in its local habitat. In this case the Receiver's office was located in Louisville, the home of the bank; payment of assessments, like other obligations due the bank, could have been made there, and, in fact, shareholders were notified by the Receiver to pay at his office in Louisville.[4] Liquidation of a local bank, like its daily operations, must from necessity and in the interest of good business be carried on, in the main, in the community where the bank did business with its depositors and other customers. Practically everything that preceded the final fixing of liability of shareholders derived from Kentucky transactions. We have been referred to no Ohio decisions, and have been unable to find any, which contradict our conclusion that events which culminated in this suit justify our holding that this "cause of action" "arose" in Kentucky within the meaning of the Ohio statute. See *Hunter* v. *Niagara Fire Ins. Co.,* 73 Ohio St. 110, 76 N. E. 563; *Alropa Corp.* v. *Kirchwehm,*

---

[4] Whether notice by the Receiver to pay at a particular place could alter the conclusive situation as to where a cause of action might be considered to "arise" under other circumstances is a question we need not decide.

138 Ohio St. 30, 33 N. E. 2d 655; *Payne* v. *Kirchwehm,* 141 Ohio St. 384, 48 N. E. 2d 224; *Bowers* v. *Holabird,* 51 Ohio App. 413, 1 N. E. 2d 326; *National Bondholders Corp.* v. *Stoddard,* 22 Ohio O. 145, 8 Ohio Supp. 19. See also *Hilliard* v. *Pennsylvania R. Co.,* 73 F. 2d 473, 475–476; Note, 15 U. of Cin. L. Rev. 337 (1941); Note, 21 Ohio O. 107 (1941). Therefore the judgment in No. 656 is affirmed.

In No. 593, the Pennsylvania action, the same considerations are controlling. The general statute of limitations of that state which would be applicable to this action had it arisen in Pennsylvania, like Ohio's general statute, provides a six-year period in which this suit could be brought. 12 Pa. Stat. § 31 (Purdon, 1931). But Pennsylvania also has a "borrowing statute" which provides: "When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth." 12 Pa. Stat. § 39 (Purdon, 1931). Our review of Pennsylvania decisions construing this statute persuades us that the borrowing statute is applicable to this case, that under that statute this cause of action "arose" in Kentucky, and that the five-year statute of Kentucky bars this action. See *Mister* v. *Burkholder,* 56 Pa. Super. 517; *Fletcher's Estate,* 45 Pa. D. & C. 673, 674; *Bell* v. *Brady,* 346 Pa. 666, 31 A. 2d 547; *Shaffer's Estate,* 228 Pa. 36, 40, 76 A. 716, 717. *Cf. Rosenzweig* v. *Heller,* 302 Pa. 279, 153 A. 346. See also Notes, 88 U. of Pa. L. Rev. 878 (1940), 4 U. of Pitt. L. Rev. 215 (1938). The judgment of the Circuit Court of Appeals in No. 593 is therefore reversed.

*So ordered.*

The Chief Justice took no part in the consideration or decision of these cases.