**FARMERS & MERCHANTS NATIONAL BANK; and Federal Deposit Insurance Corporation, as Receiver of Farmers & Merchants National Bank, Hennessey, Oklahoma, Plaintiffs–Appellees,**

v.

**Bruce A. BRYAN and Robert Bryan, Defendants–Appellants.**

No. 88–2845.

United States Court of Appeals, Tenth Circuit.

May 10, 1990.

David L. Bryant (Gene C. Buzzard and James W. Rusher, of Gable & Gotwals, Tulsa, Okl., and A.T. Dill, III, Federal Deposit Ins. Corp., Washington, D.C., of counsel, with him on the briefs), of Gable & Gotwals, Tulsa, Okl., for plaintiffs-appellees.

William C. McAlister, of Pate & Payne, Oklahoma City, Okl., for defendants-appellants.

Before McKAY and BARRETT, Circuit Judges, and EARL E. O'CONNOR,* District Judge.

---

* The Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

EARL E. O'CONNOR, District Judge.

Defendants, former officers and directors of the Farmers & Merchants National Bank of Hennessey, Oklahoma, ("F & M" or "the bank") appeal from a jury verdict finding them liable for violating federal lending limits and making imprudent loans. The district court denied defendants' motion for directed verdict at the close of plaintiffs' evidence, and defendants rested without putting on evidence of their own.

On appeal, defendants contend that the applicable statute of limitations barred suit on six (6) of the eleven (11) loans that exceeded lending limits and fifty-one (51) of the eighty-eight (88) imprudent loans. Plaintiffs admit that defendants made certain loans outside the limitations period, but claim that the doctrine of "adverse domination" tolled the statute of limitations. In denying defendants' motion for directed verdict, the district court held that whether the statute of limitations was tolled in this case turned upon a disputed question of material fact for resolution by the jury. Defendants also complain about certain evidentiary rulings of the lower court. We affirm.

Defendant Bruce Bryan was president of F & M from 1973 to 1984. In 1977, he purchased a controlling interest in F & M and became chairman of its board of directors. Bruce Bryan sold his interest in the bank in 1984. Defendant Robert Bryan is the son of Bruce Bryan and became an assistant vice president of F & M in 1978. From 1979 to 1984 he was on F & M's board of directors, and, in 1983, he was promoted to Executive Vice President. The subsequent owners of F & M initiated this suit against the Bryans, alleging that, from 1976 to 1984, defendants made certain loans in excess of lending limits and imprudently made other loans. After the United States Comptroller of the Currency closed the bank on December 5, 1985, the district court substituted the Federal Deposit Insurance Corporation, as receiver of F & M, as plaintiff.

In the absence of a specific federal statute of limitations to apply to plaintiffs' claims, the trial court correctly borrowed the three-year Oklahoma statute, Okla. Stat. tit. 12, § 95 (1981), to determine whether plaintiffs' claims were barred. *See Hughes v. Reed,* 46 F.2d 435, 439 (10th Cir.1931). When plaintiffs' causes of action accrued and whether the statute of limitations was equitably tolled, however, remained questions of federal law. *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947); *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687, 691 (10th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).

In general, a cause of action on an improper loan accrues at the time the loan is made. *Corsicana Nat'l Bank v. Johnson,* 251 U.S. 68, 86, 40 S.Ct. 82, 90, 64 L.Ed. 141 (1919). However, this court in *Hughes* recognized that, "where the existence of the cause of action was concealed, by actual misrepresentation of the wrongdoer, time did not begin to run until actual discovery." *Hughes,* 46 F.2d at 441. Similarly, other courts have adopted the theory of "adverse domination" as another equitable vehicle under federal common law for tolling the statute of limitations. *See Mosesian v. Peat, Marwick Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *IIT v. Cornfeld,* 619 F.2d 909, 931 (2d Cir.1980); *International Rys. v. United Fruit Co.,* 373 F.2d 408, 414 (2d Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967). The court in *International Rys.* explained the relevant inquiry under the adverse domination theory in this manner:

> [A] plaintiff who seeks to toll the statute on the basis of domination of a corporation has the burden of showing "a full, complete and exclusive control in the directors or officers charged." *Payne v. Ostrus,* 50 F.2d 1039, 1042, 77 A.L.R. 531 (8th Cir.1931). Such control was found, for example, in *Adams v. Clarke,* 22 F.2d 957 (9th Cir.1927), where all the

directors were accused of wrongdoing and held a majority of the capital stock, and also in our [*Michelsen v. Penney*] case, supra [135 F.2d 409] (2d Cir.1943). This principle must mean at least that once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed director could have induced the corporation to sue.

*International Rys.*, 373 F.2d at 414; accord, *Mosesian*, 727 F.2d at 879; *IIT*, 619 F.2d at 931. The application of the adverse domination theory to facts such as those in the case at bar presents an issue of first impression in this circuit. However, we find the court's reasoning in *International Rys.* persuasive and sound, and therefore adopt the theory as part of the federal common law of this circuit.

■ Defendants urge that they were entitled to a directed verdict on plaintiffs' claim that adverse domination tolled the statute of limitations. The standard for reviewing the trial court's denial of defendants' motion for directed verdict is clear: a directed verdict is proper only if the evidence, construed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party. *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir. 1988). The defendants' argument that the existence of two outside directors on F & M's board of directors negates, as a matter of law, application of the adverse domination theory is without merit. Under *International Rys.* the relevant inquiry is inherently fact-specific. The requirement that the directors or officers charged be in "full, complete and exclusive control" of the corporation must be understood in light of the particular situation: "once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed director could have induced the corporation to sue." *International Rys.*, 373 F.2d at 414. Of course, a plaintiff may also demonstrate adverse domination by proving that an informed director, though capable of suing, would not do so. In reviewing the trial court's denial

of defendants' motion for directed verdict in this case, the issue is whether there was evidence, when viewed in the light most favorable to plaintiffs, upon which a reasonable jury could find both (1) that the two outside directors knew or should have known the facts giving rise to possible liability and (2) that neither director could or would have induced the corporation to sue. If so, the motion for directed verdict was properly overruled.

Plaintiffs produced ample evidence from which a reasonable jury could find that the outside directors knew, or should have known, of defendants' illegal and tortious actions. Examiners from the Office of the Comptroller of the Currency rendered numerous examination reports that were highly critical of the lending practices at F & M during the period in which the loans at issue were made. Robert Bryan testified that the board of directors, including the outside directors, reviewed these reports and approved written responses thereto. Because these reports gave the entire board of directors at least constructive notice of F & M's unsound lending practices, plaintiffs clearly raised a fact issue as to the outside directors' knowledge.

■ Defendants claim that the trial court erred in admitting the above-mentioned examination reports. We do not agree. Our standard of review on this point is whether the trial court clearly abused its discretion. *Hill v. Bache Halsey Stuart Shields, Inc.*, 790 F.2d 817, 825 (10th Cir.1986). Defendants objected to the examination reports on the grounds that they were hearsay and that their prejudicial effect outweighed any probative value. The reports, including the various conclusions critical of defendants' actions contained therein, were admissible under Rule 803(8)(C) of the Federal Rules of Evidence, the "public records" exception to the hearsay rule. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (holding that investigatory reports containing conclusions or opinions are admissible if they are based on a factual investigation and satisfy Rule 803(8)(C)'s trustworthiness requirement).

Defendants do not contend that the reports were otherwise inadmissible under Rule 803(8)(C) and do not contest the trial court's finding that the reports were trustworthy; therefore, the hearsay objection must fail. Moreover, any prejudicial effect of admitting these reports and the accompanying testimony of plaintiffs' expert was plainly outweighed by their probative value on, *inter alia*, the issue of the outside directors' knowledge. *See* Fed.R.Evid. 403. Accordingly, the trial court did not abuse its discretion by receiving the reports into evidence.

Plaintiffs also produced sufficient evidence to withstand defendants' motion for directed verdict on the question of the outside directors' ability or willingness to bring suit on behalf of the corporation. Specifically, Marjorie Bryan, who was also a director of F & M, testified, in substance, that the board of directors generally trusted the loan officers to properly evaluate the wisdom of any given loan those officers recommended to the board for approval. Similarly, Robert Bryan testified that the outside directors exercised little, if any, independent supervision over the lending activities of the bank. Again, plaintiffs at least raised a jury question on the issue of the outside directors' ability or willingness to bring an independent action on behalf of F & M.

 Defendants also appeal the trial court's admission of evidence of their practice of capitalizing interest on loans and the court's exclusion of evidence concerning the actions taken by the subsequent owners of F & M. Defendants' assertion that these rulings were an abuse of discretion are without substance. Evidence of capitalization of interest was relevant to show defendant Bruce Bryan's possible motive for violating lending limits and making imprudent loans, inasmuch as his compensation was partly based on the bank's revenues. By contrast, whatever actions subsequent owners of F & M may have taken could have no bearing upon the propriety of the loans at issue in this lawsuit. Furthermore, the trial court's repeated admonitions to the jury that they were concerned only with specific loans and not with why F & M ultimately failed were sufficient to avoid the allegedly prejudicial effects of which defendants complain.

Having carefully reviewed the record on appeal and the asserted errors, we conclude that the judgment of the court below is and should be AFFIRMED.