Gloria L. NOWLIN, Plaintiff,

v.

EASTERN ASSOCIATED COAL CORP., Defendant.

No. CIV.A. 1:02CV51.

United States District Court, N.D. West Virginia.

May 13, 2003.

Robert F. Cohen, Jr. Cohen, Abate & Cohen, LC, Morgantown, WV, for Plaintiff Gloria L. Nowlin.

William S. Mattingly, Kathy L. Snyder, Jackson & Kelly PLLC, Morgantown, WV, for Defendant Eastern Associated Coal Corporation.

## ORDER

KEELEY, District Judge.

Before the Court is the motion to dismiss of defendant Eastern Associated Coal Corporation. For the reasons that follow, the Court **DENIES** the defendant's motion.

## I.

### FACTUAL BACKGROUND

On January 6, 1976, Malcolm Nowlin, a retired coal miner and former employee of defendant Eastern Associated Coal Corporation ("Eastern"), filed a claim for benefits under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. §§ 901–945. Mr. Nowlin was initially awarded benefits on May 1, 1980. Eastern appealed the award but, before the case was heard, Mr. Nowlin died on March 17, 1981. Following his death, on April 10, 1981, his widow, Gloria Nowlin ("Nowlin"), filed an application for black lung survivor's benefits. For the next twenty years, Nowlin's claim proceeded through a protracted series of appeals to the United States Department of Labor

Benefits Review Board ("BRB"), and remands to Department of Labor administrative law judges ("ALJs").[1]

Finally, on May 14, 1999, on a fourth remand, the ALJ awarded Nowlin benefits retroactive to January 1, 1976, the date Malcolm Nowlin first filed his claim. Eastern appealed that decision to the BRB, which affirmed the ALJ's award of benefits on June 22, 2000. Neither party filed an appeal or request for reconsideration. Thus, the BRB's June 22, 2000 order became final, and Eastern began paying benefits to Nowlin, in December, 2000.[2]

On April 1, 2002, Nowlin filed the instant action seeking to recover an additional twenty percent (20%) of the amount of benefits Eastern refused to pay her during the pendency of her claim. The 20% penalty assessment arises automatically under 33 U.S.C. § 914(f) when an employer is untimely in its payment of benefits awarded by an ALJ. 33 U.S.C. § 914(f). Section 914(f) does not, however, provide a means to enforce the penalty award and, consequently, Nowlin brings this action under 33 U.S.C. § 921(d).

Eastern moved to dismiss Nowlin's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (1) Nowlin's relief is barred by the applicable statute of limitations; (2) an action seeking to enforce a 20% penalty must be brought under § 914(f), rather than § 921(d); and (3) Nowlin cannot recover because she failed to first obtain a "supplementary order" declaring the amount of default from the Department of Labor's District Director.

After the parties had completed their briefing of the issues, the Court conducted

---

1. This series of appeals and remands is described fully in Eastern's memorandum supporting its motion to dismiss.

2. The Black Lung Disability Trust Fund paid Nowlin benefits during the pendency of her claim. Eastern, itself, paid benefits to Nowlin between 1991 and 1993.

a hearing and ordered the parties to ascertain the Department of Labor's interest in intervening, or in filing an *amicus curiae* brief regarding whether a successful black lung claimant is required to obtain a supplementary default order from the District Director before filing an action to enforce a penalty under § 921(d).

The Director, Office of Workers' Compensation Programs (the "Director"), United States Department of Labor, filed an *amicus* brief in this matter on February 14, 2003, in which he argued that Nowlin was not required to apply to the District Director for a supplementary default order. Eastern and Nowlin have both responded to the Director's brief and the matter is ripe for the Court's review. The issues this Court must decide, therefore, are three-fold: First, whether Nowlin's action is barred by the applicable statute of limitations; second, whether she can enforce a 20% penalty in an action brought under § 921(d); and, third, whether her recovery is barred because she did not first obtain a supplementary default order from the District Director.

For the reasons that follow, the Court holds that Nowlin's claim is not time-barred, she may proceed under § 921(d), and she was not required to first obtain a supplementary default order from the District Director.

## II.

### *STANDARD OF LAW*

On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001) (citation omitted). The court should not grant a motion to dismiss for failure to state a claim for relief unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citation omitted).

## III.

### *THE STATUTORY SCHEME*

"The BLBA established a comprehensive scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis." *Kinder v. Coleman & Yates Coal Co.*, 974 F.Supp. 868, 870 (W.D.Va.1997) (citing 30 U.S.C. §§ 901–945). The Director administers claims under the BLBA in accordance with the procedural provisions of the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 901–950. 30 U.S.C. § 932(a). An employer must begin payment within thirty days of an "effective" award of benefits, regardless of whether the employer chooses to appeal the award. 33 U.S.C. § 918(a). Under the Act, an award is effective when it is filed in the District Director's office. 33 U.S.C. § 921(a). An effective award then becomes "final" thirty days later, or after an aggrieved party has exhausted its appeals. *Id.*

"The LHWCA contains separate provisions for the enforcement of effective and final awards in the event of an employer's default." *Kinder*, 974 F.Supp. at 871. A claimant may enforce an "effective" award of benefits under 33 U.S.C. § 918(a) and a final award of benefits under 33 U.S.C. § 921(d).

Under § 918(a), if an employer fails to make a payment within thirty days of the date it is due, a claimant may apply to the District Director for a "supplementary order" to declare the amount in default. 33 U.S.C. § 918(a). A claimant may then file this order with a district court and obtain a judgment for that amount. *Id.* The

claimant has one year from the date of default to apply to the District Director for an order. *Id.*

In contrast to the provisions of § 918(a), § 921(d) does not require a claimant to first obtain a supplementary order from a District Director, nor does it contain an express statute of limitations. 33 U.S.C. § 921(d). Under § 921(d), a district court must enforce an award if it was "made and served in accordance with law," and an employer has failed to comply with it. *Id.*

"The LHWCA also seeks to encourage prompt payments by penalizing employers who delay in meeting their obligations." *Kinder*, 974 F.Supp. at 871. If an employer fails to pay an award within ten days of when it is due, § 914(f) imposes an automatic penalty of twenty percent (20%) on the underlying compensation award. 33 U.S.C. § 914(f). Section 914(f) does not, however, specifically provide for the issuance or enforcement of a penalty award.

Here, Nowlin's award of benefits became final on August 21, 2000 and Eastern began making payments to her in December, 2000. Because Eastern refused to pay Nowlin benefits during most of the time her claim was pending, she seeks to enforce the 20% penalty provided for by § 914(f) on the amount of those unpaid benefits. Because § 914(f) does not provide a mechanism to enforce a penalty assessment, however, she has brought this action under § 921(d).

### IV.

### *DISCUSSION*

#### A.

Eastern first contends that Nowlin's claim is time-barred. The language of § 921 does not include a specific statute of limitations. Courts that have previously addressed this issue have found that a federal court should borrow the applicable state's general statute of limitations. *See Cassell v. Taylor*, 243 F.2d 259 (D.C.Cir. 1957); *Kinder*, 974 F.Supp. at 878. The general statute of limitations period in West Virginia is the two-year period provided in West Virginia Code § 55–2–12. The parties agree that this two-year period applies to Nowlin's claim if it can be brought under § 921. The parties disagree, however, as to when the clock started ticking on the two-year limitation period.

■ Eastern claims that the statute of limitations began to run on May 14, 1999, the date of the final ALJ order awarding benefits to Nowlin. Nowlin contends that it began to run on the date the ALJ's decision became final, that is, when the BRB affirmed it on June 22, 2000.

An effective award becomes final thirty days after it is filed in the District Director's office, or after an aggrieved party has exhausted its appeals. 33 U.S.C. § 921(a). Here, Eastern chose not to appeal the BRB's June 22, 2000 affirmance of the ALJ's May 14, 1999 decision awarding benefits to Nowlin. Nowlin's award, therefore, became final on August 21, 2000—when the sixty day period for filing appeals expired. 33 U.S.C. § 921(c). Under West Virginia's two-year statute of limitations, therefore, Nowlin had until August 21, 2002 to bring an action under § 921(d) to enforce a 20% penalty assessment. Her complaint, therefore, was timely when filed in this Court on April 1, 2002.

#### B.

■ Eastern next contends that Nowlin's use of § 921, rather than § 918, to enforce a 20% penalty assessment is improper, and characterizes Nowlin's action as a "strained" interpretation of § 921. However, nothing in the plain language of § 921 prohibits a claimant from enforcing

a 20% penalty under that section, and Eastern has not identified any case holding that such enforcement actions are prohibited.

Few reported cases have considered this precise issue. In *Providence Washington Ins. Co. v. Director, OWCP*, 765 F.2d 1381 (9th Cir.1985), the Ninth Circuit held that the BRB lacked jurisdiction to review supplemental orders assessing § 914(f) penalty awards. *Id.* at 1386. In reaching its conclusion, the court analyzed the interplay among §§ 914, 918 and 921, *id.* at 1384–86, and explained that, under § 918, a claimant could, in the same proceeding, obtain both a supplemental order declaring the amount of unpaid benefits under a compensation order and the 20% penalty. *Id.* at 1385–86. In contrast, the court stated that, under § 921's procedures, "it would be far more difficult and cumbersome for a claimant to collect both awards at the same time." *Id.* at 1386. The court then concluded that enforcement of a 20% penalty under § 918 is more "logical" and "far better meets the Congressional purpose" than enforcement pursuant to § 921. *Id.*

Although *Providence* characterized § 921 enforcement actions as "difficult and cumbersome," it did not expressly foreclose that section as an avenue of recovery for claimants. Thus, while *Providence* may dispel Nowlin's assertion that § 921(d) actions are as "equally efficacious" as actions brought under § 914(f), the case is not conclusive support for Eastern's argument that such actions are barred.

Indeed, despite *Providence*'s criticism, both the Fourth Circuit Court of Appeals and a district court in this circuit have indicated that actions to enforce 20% penalty assessments may be brought under § 921(d). In *Reid v. Universal Maritime Service Corp.*, 41 F.3d 200 (4th Cir.1994),

our circuit court considered whether an employer must make payments to injured workers within ten calendar days or ten business days in order to avoid the penalty assessment of § 914(f). *Id.* at 201. In finding that the Federal Rules of Civil Procedure do not govern the ten day payment period, the court distinguished between the "substantive" nature of § 914, and the "procedural" nature of §§ 918 and 921, stating that a penalty arising under § 914(f) "needs a § 918 *or* § *921* proceeding to be given effect." *Id.* (emphasis added). Undergirding *Reid*'s reasoning is the understanding that a § 914(f) penalty can be assessed in an action brought under either § 918 or § 921. Nowlin's action, therefore, is not barred simply because she brought it under § 921.

The district court in *Kinder* reached the same conclusion. As in the present case, *Kinder* arose out of a former employee's attempt to enforce a 20% penalty award against a coal company after the company failed to make timely payment of black lung benefits. 974 F.Supp. at 869. The district court ultimately found the employee's claim to be untimely, but, before reaching that conclusion, it discussed the procedural framework for the adjudication and enforcement of black lung claims. *Id.* at 869, 870–72.

While noting the criticism in *Providence* of enforcement actions brought under § 921(d), the district court cited *Reid* as evidence that courts have not precluded enforcement of a 20% penalty under that section. *Id.* at 872. Elsewhere in the opinion, when choosing to apply Virginia's general statute of limitations, the district court concluded that "an employee who effectively waives his section 918(a) rights would still have two years after an award becomes final to seek enforcement *pursuant to section 921(d)*." *Id.* at 879 (emphasis added). Thus, *Kinder* also interpreted

the statutory scheme as permitting 20% penalty assessments to be enforced in § 921(d) actions.

■ Despite *Providence*'s criticism of actions brought under § 921 to enforce 20% penalty awards, both *Reid* and *Kinder* support the conclusion that such actions may proceed under that section. Moreover, nothing in the BLBA expressly prohibits 20% penalty assessments from being enforced in § 921 actions. Therefore, this Court concludes that Nowlin's action is not barred simply because she brought it pursuant to § 921(d).[3]

### C.

■ Eastern's final argument in favor of dismissal is that Nowlin's action is barred because she did not first obtain a supplementary order declaring the amount of Eastern's default. Nowlin brings her action under § 921(d) which, unlike § 918(a), does not expressly require a claimant to obtain a supplementary order before enforcing a compensation award. *Compare* 33 U.S.C. § 918, *with* 33 U.S.C. § 921. Eastern recognizes this silence but, nevertheless, argues that § 921(d) includes a supplementary order requirement.

[5] In his *amicus* brief, the Director concludes that a supplementary order is not a prerequisite to a § 921 action and "urge[s] the Court to reject [Eastern's] attempt to add a requirement for a supplementary default order onto ... [§ 921(d)]." (Director's *Amicus* Br. at 3.) This Court should defer to the Director's interpretation of a silent or ambiguous statute that he administers if his interpre-

tation is reasonable. *Betty B Coal Co. v. Director, OWCP,* 194 F.3d 491, 498 (4th Cir.1999) (citing *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991)). Further, an agency's interpretation should be upheld if it is "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see Wilson v. Lyng,* 856 F.2d 630, 636 (4th Cir.1988) (noting that deference to an agency's reasonable interpretation is appropriate because agencies possess the expertise to interpret statutes and are in a position to provide nationally uniform interpretations of statutory terms).

■ The Director's interpretation of § 921 is well-supported by one of the standard rules of statutory construction: It is well settled that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Where Congress wanted to require a claimant to first obtain a supplementary default order, it did so expressly, as in § 918. If Congress had meant to include a similar requirement in § 921, it could have done so clearly and explicitly. Accordingly, this Court will not infer a requirement Congress chose not to add.

---

**3.** Although not specifically asked to address this question, the Director reached the same conclusion in his *amicus* brief. (Director's *amicus* br. at 8.) ("A claimant may thus seek enforcement of an employer's section [9]14(f) liability under either section [9]18(a) or [9]21(d).") (citations omitted). A court should defer to an agency's reasonable interpretation of a statute it administers. *See Betty B Coal Co. v. Director, OWCP,* 194 F.3d 491, 498 (4th Cir.1999).

Further, the Director's interpretation of § 921 is consistent with the different functions §§ 918 and 921 serve in the BLBA's remedial scheme. While § 918 permits enforcement of effective, but not-yet-final awards, § 921 permits the enforcement of final awards. *Kinder,* 974 F.Supp. at 871; *see Williams v. Jones,* 11 F.3d 247, 254 (1st Cir.1993) ("Section 918 ... affords injured employees a convenient, inexpensive, and expeditious mechanism for facilitating enforcement of 'effective' compensation awards even before they have become 'final.' "). Together, the statutes allow "a claimant to quickly receive benefits while preserving an employer's right of appeal." *Id.* at 877, n. 20. Because § 918(a) allows a claimant to enforce a 20% penalty when a claim is still being litigated and is not final, it predictably requires the claimant to obtain a supplementary order declaring the amount of default.

In contrast, § 921(d) performs a different, but complementary function, in the BLBA remedial scheme. A claimant proceeds under this section after she has defended her claim through the appellate process and to finality. *Kinder,* 974 F.Supp. at 879. ("[A]n employee who effectively waives his section 918(a) rights would still have two years after an award becomes final to seek enforcement pursuant to section 921(d)."). Unlike the *"bifurcated* process involved in a section 918(a) enforcement proceeding, ... section 921(d) constitutes ... the employer's *first* and *only* forum for a full hearing of ... factual disputes...." *Williams,* 11 F.3d at 253–54 (emphasis in original). It is reasonable, therefore, that § 921 does not require a supplementary order because, in such an action, an award of benefits has become final and a court can determine the amount on which the penalty is calculated without difficulty. *See Providence,* 765 F.2d at 1386

Relief under § 921 also differs from the relief provided for in § 918. Rather than a money judgment, a successful claimant in a § 921 action obtains injunctive relief, exposing the delinquent employer to a district court's coercive contempt powers and compelling it to pay any outstanding benefits. *Williams,* 11 F.3d at 256.

The Court of Appeals for the District of Columbia Circuit has also contrasted the different roles served by the two sections in the enforcement of final compensation awards. In *Cassell v. Taylor,* 243 F.2d 259 (D.C.Cir.1957), that court explained that § 918 instructs a court to enter judgment only after the District Director has certified the amount in default in a supplementary order. *Id.* at 260. Section 921, on the other hand, allows a court to "enforce obedience to the (original) order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon (the employer) ... compliance with the order." *Id.* (citation omitted).

As these cases demonstrate, the well-recognized distinctions between § 918 and § 921 actions account for their different procedural requirements. Because a § 921 proceeding occurs at a different stage in the preparation of an injured employee's claim—after the compensation award has become final—a supplementary order is unnecessary.

Nor has Eastern provided a compelling argument to show that a supplementary order is needed. Eastern suggests that the order is necessary to indicate the amount of unpaid benefits on which a 20% penalty is assessed. If presented with sufficient evidence, however, the Court can determine the amount of unpaid benefits. *See Williams,* 11 F.3d at 253 n. 7 (suggesting that a default order is unnecessary in a § 921 proceeding, describing it as "supererogatory," and nothing that "unlike § 918(a), § 921(d) expressly reserves such

matters for resolution by the district court."). Moreover, in *Providence,* the Ninth Circuit noted that the penalty calculation requires only an "additional arithmetic computation," and any computational problems that arise "could be easily resolved at the ... federal district court." 765 F.2d at 1386.

The cases on which Eastern relies in support of its argument are unpersuasive. According to Eastern, both *Reid* and *Quintana v. Crescent Wharf and Warehouse Co.,* 18 BRBS 254 (Ben.Rev.Bd. 1986) suggest that § 921 includes a supplementary order requirement; however, neither case supports its position. The claimant in *Reid* sought to enforce a 20% penalty under § 918(a) and, therefore, was clearly required to obtain a supplementary default order. *Reid,* 41 F.3d at 201. Similarly, in *Quintana,* the claimant's award was not yet final and his only option to enforce a 20% penalty arose under § 918(a) and that section's supplementary default order requirement. Neither case presented a situation similar to the one presently before this Court where the claimant seeks to enforce a 20% penalty under § 921(d).

The Director's conclusion that § 921 does not require a supplementary order is, therefore, consistent with a guiding principle of statutory construction, as well as the complementary and unique functions §§ 918 and 921 have in the BLBA remedial scheme. Furthermore, Eastern has not provided a sufficiently compelling argument to cast doubt on the reasonableness of the Director's interpretation, or shown that it is not a permissible construction of the statute. On the contrary, the Director's conclusion is rational and consistent with the statutory goal of providing relief to victims of black lung disease. *See Kinder,* 974 F.Supp. at 870; *see also Akindemowo v. INS,* 61 F.3d 282, 284–85 (4th Cir.1995) (citing *NLRB v. United Food & Comm. Workers Union, Local 23,* 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987)). For these reasons, the Court finds that the Director's conclusion is a reasonable interpretation of the statute and holds that a claimant need not obtain a supplementary default order before proceeding under § 921.

## V.

### *CONCLUSION*

Based on the foregoing, the Court DENIES Eastern's motion to dismiss (Docket no. 6). The Court will notify the parties of a date when it will conduct a scheduling conference to determine the dates and deadlines that will govern further preparation of this case.

It is so **ORDERED.**

The Clerk is directed to mail copies of this Order to counsel of record and to counsel for *amicus curiae.*